IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA**

v.                                                                                          **Case No. 3:16cr18**

**DAYMONT UNDERWOOD**

## MEMORANDUM OPINION

This matter comes before the Court on Daymont Underwood's "Notice (In Lieu of Motion) of my Challenge to the Political Jurisdiction of the United States of America Over Me and Demand that All Charges Against Me be Dismissed as United States of America Cannot Properly Establish that it has Political or Civil Contractual Jurisdiction Over Me" (the "Notice").[1] (ECF No. 40.) The United States has responded. (ECF No. 41.) Underwood has not filed a written response, and the time to do so has expired. The Court heard oral argument during the October 18, 2016

---

[1] In a July 29, 2016 hearing, the Court admonished Underwood about the proper procedure for raising issues in this Court:

> THE COURT: What you do is file a written motion under the rules saying why you are entitled to what you're asking for. You don't come in with brand new motions ever again citing arguments with cases you don't even know where they come from and try to persuade me inappropriately at the last minute.
> There are deadlines, and you have to follow the rules of criminal procedure, the rules of evidence, and the rules of courtroom decorum. Do you understand? That's a yes or no question.
> MR. UNDERWOOD: Uh, I understand.

(July 29 Tr. 137:9–20.) Underwood's "Notice" does not comport with this admonition.

status hearing. Accordingly, the matters are ripe for disposition. The Court exercises jurisdiction pursuant to 18 U.S.C. § 3231.[2]

## I. Factual and Procedural Background

Underwood's case has a long procedural history. From the time he began to proceed *pro se*, Underwood has sought continuances because he was unprepared for the scheduled hearings, failed to follow the rules and procedures of the courtroom, and presented the same argument in multiple different forms. The "Notice" is one more attempt by Underwood to raise an issue on which this Court has already ruled. The Court undertakes an extensive analysis of this improperly brought "Notice" because the Court must order a psychological evaluation pursuant to 18 U.S.C. § 4241(a) before this trial can commence.

### A. Underwood's Arrest, Indictment, and Arraignment

On October 20, 2015, after a traffic stop, Underwood was arrested and charged in the Virginia court system for driving with a suspended license, failure to stop at a stop sign, possession of a firearm by a convicted felon, and possession with intent to distribute marijuana. On February 16, 2016, Underwood was charged in a one-count indictment in the Eastern District of Virginia with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). (ECF

---

[2] Section 3231 states in full:

> The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.
> Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

18 U.S.C. § 3231. Underwood is charged with: (1) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g); (2) possession with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D); and, (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c).

2

No. 1.) On April 7, 2016, Underwood made his initial appearance before the Honorable Roderick C. Young, United States Magistrate Judge, who appointed the Federal Public Defenders' office to represent Underwood. (ECF No. 8.) With counsel and Underwood present, the Court scheduled a June 15, 2016 jury trial. (ECF No. 10.)

### B.    June 15, 2016:   Underwood Files a Motion to Dismiss on His Own Behalf

On April 25, 2016, Underwood, through counsel, filed a Motion to Suppress Statements and Evidence based on the October 20, 2015 traffic stop. (ECF No. 15.) On June 2, 2016, at the initial hearing on the Motion to Suppress, Underwood, through counsel, requested a continuance in order to subpoena a witness. The Court continued the hearing to June 15, 2016, the original trial date.

At the start of the June 15, 2016 hearing, Supervisory Assistant Federal Public Defender ("SAFPD") Robert Wagner informed the Court that Underwood wished to address the Court *pro se*. Underwood informed the Court that he did not think that he and SAFPD Wagner were "seeing eye to eye" on strategic issues regarding Underwood's case. Underwood told the Court that he had "other matters" he wanted to address that SAFPD Wagner did not "see fit" to address on his behalf, and that Underwood had his "own motions." In response to the Court's questioning, Underwood confirmed that a total lack of communication did not exist, and that he simply disagreed with SAFPD Wagner's strategy.

SAFPD Wagner confirmed that Underwood felt "compelled" to file the motions, and that Underwood needed to do so without SAFPD Wagner's representation.[3] Underwood confirmed

---

[3] SAFPD Wagner would not state the reason why he could not file the motion on Underwood's behalf. The Court did not press Wagner because it did not want to impinge on the attorney-client relationship.

3

that desire, expressing dissatisfaction with SAFPD Wagner's refusal to file. The Court conducted extensive inquiry of Underwood and SAFPD Wagner regarding Underwood's desire to file additional motions. The Court allowed Underwood to file his Motion to Dismiss without counsel's involvement,[4] and continued the motions hearing until June 15, 2016, the original trial date. The Court also told Underwood that, to assure a speedy trial and not to waste resources, the trial would be rescheduled for June 22, 2016, and would be cancelled if the Motion to Suppress were successful. (ECF No. 20.)

### C. June 15, 2016: Underwood Moves to Proceed *Pro Se*

Later in the June 15, 2016 hearing, Underwood moved orally to represent himself. Underwood stated that he and SAFPD Wagner disagreed about strategy, but that no breakdown in communication existed, and that Underwood did not wish to have a different attorney. The Court warned Underwood about the pitfalls of self-representation, noting that Underwood would be responsible for arguing his case within legal bounds, and for following all rules, deadlines, and courtroom protocol. For a second time, to accommodate Underwood's positions, the Court continued the Motion to Dismiss until July 26, 2016, continued the Motion to Suppress until July 29, 2016, and set a new trial date of August 31, 2016. That same day, Underwood filed his handwritten Motion to Dismiss, which the Court construes to have been based on the exclusionary

---

[4] That same day, Underwood filed his handwritten Motion to Dismiss which the Court construed to have been based on the exclusionary rule, the double jeopardy clause, and vindictive prosecution. (ECF No. 23.)

4

rule, the double jeopardy clause, and vindictive prosecution. (ECF No. 23.) The United States filed a response, (ECF No. 25), and Underwood filed a reply, (ECF No. 26).[5]

### D. July 26, 2016: The Second Continued Suppression Hearing and the First Hearing on Underwood's Written Motion to Dismiss

On July 26, 2016, the Court held the continued hearing on Underwood's Motion to Dismiss. Underwood appeared and again stated that he could not go forward because he was unprepared. Underwood complained that he had sent subpoenas to the Court that had not been acted upon. While the Court had received a "Request to Stop Transfer of Inmate" from Underwood on July 1,[6] (ECF No. 26), no subpoena requests had been received or docketed. Reminding Underwood that his decision to represent himself did not exempt him from adhering to Court rules or procedure, the Court allowed Underwood to attempt to serve the subpoenas one last time, and continued argument for the vindictive prosecution aspect of his motion to dismiss to July 29, 2016.[7]

---

[5] Underwood's Motion to Dismiss and Reply pepper various constitutional and statutory catch-phrases throughout. For instance, Underwood made a passing reference to Speedy Trial Issues in support of his "Egregious Prosecutorial Misconduct" charge. (Def.'s Reply 12, ECF No. 27.) Underwood's Reply brief also raised new arguments that the Court interpreted and ruled on as "right to travel" arguments. *See infra*, n.7. The Court's rulings on the Motion to Dismiss included admonitions to Underwood that repeated failure to follow the rules could result in adverse consequences.

[6] The Court denied the "Request to Stop Transfer of Inmate" as moot during the July 26, 2016 hearing.

[7] Underwood's Reply brief had introduced new arguments that the Court interpreted as "right to travel arguments." Underwood argued that "[p]ersonal liberty largely consists of the Right of locomotion—to go where and when one please [sic]. The Right of the Citizen to travel upon the public highways and to transport his property thereon, by horse drawn [sic] carriage, wagon, or automobile, is not a mere privilege which may be permitted or prohibited at will, but the common Right which he has under his Right to life, liberty, and the pursuit of happiness." (Def.'s Reply 8, ECF No. 27 (citation omitted).) He also cited a 1934 dissenting opinion in a case before the Supreme Court of Washington, *Robertson v. Dep't Pub. Works*, 39 P.2d 596 (Wash. 1934)

The Court heard argument on the exclusionary rule. Underwood essentially challenged the constitutionality of the traffic stop. In his support of his motion, Underwood stood at the podium and gave his version of the facts, telling the Court to "take notice that" the prosecutor was just a "narrator of his story" who presented the officers' testimony and storyline "ex parte." (July 26 Tr. 26.) Underwood read nearly verbatim the document he had filed on July 18, 2016. (ECF No. 27.) Underwood then stated that "I would be considered as the main character who actually was there, and by this fact alone enables me to present the series of events that took place in chronological order." (July 26 Tr. 20.) The Court intervened, and reminded Underwood that he had to follow court rules:

> So what I talked to you about before, so you're laying the factual background, and [] you can't do that as a lawyer. You have to swear to that under oath. And so you're disputing what the government has said about that [what] happened, and I know that you're disputing what any testimony might be. But to get this version of events on, you can't just write them down. You have to swear under oath . . . . And I actually talked to you about that when we last met, that if you're going to say something factual, it's got to be under oath.

---

(Tolman, J., dissenting), in support of his statement that "[t]he second spectrum of the exclusionary rule will be based around [Underwood's] Right to enjoyment of life and liberty and [his] Right to private property." (Def.'s Reply 7, ECF No. 27.)

At the July 26, 2016 hearing, the Court told him that raising new arguments when the opposing side could not respond was prohibited. The Court reminded Underwood that even though he appeared *pro se*, he had to follow all procedural and substantive protocols. Over objection from the United States, the Court allowed Underwood to argue that his constitutional right to travel had been violated during the traffic stop.

When Underwood began to base his oral argument on the dissent in a 1934 Washington Supreme Court case, the Court admonished Underwood—again—about the perils of self-representation. The Court told Underwood that he based his argument on a case that was not "viable, good law." (July 26 Tr. 43.) It pertained to the State of Washington, not the entire United States. "I want you to be aware, sir, that you are quoting at length Justice Tolman in this 1934 case, and he dissented. So what that means is you're quoting a judge who lost, who made no law." (July 26 Tr. 42.) The Court advised Underwood—again—that he should make good use of his standby counsel so he could proceed appropriately.

6

(July 26 Tr. 21.) Thus, the Court denied the exclusionary rule aspect of the motion from the bench for several reasons, including that it largely raised issues which would be decided during the motion to suppress on July 29, 2016. (July 26 Tr. 34–37; ECF No. 38.)

The Court also heard argument as to the double jeopardy aspect of Underwood's motion to dismiss. Underwood argued, among other things, that a dismissal under a prosecutor's motion to nolle prosse the charge was an acquittal: "But nol pros would be considered abandonment. A dismissal is actually gone. It's an acquittal." (July 26 Tr. 26.) The Court denied the double jeopardy aspects of Underwood's Motion to Dismiss for the reasons stated from the bench, including that a nolle prose "is absolutely under the law not an acquittal," (July 26 Tr. 11.), that the case in the state involved a separate sovereign, and that, under the *Blockburger* test, 284 U.S. 299 (1932), the federal case involved different charges. (July 26 Tr. 38–42; ECF No. 28.) The Court declined to rule on Underwood's right to travel argument because it was procedurally improper and relied on unpersuasive authority. (July 26 Tr. 42–43.)

### E. July 29, 2016: The Third Continued Suppression Hearing and First Continued Hearing on Underwood's Written Motion to Dismiss

On July 29, 2016, the Court held a hearing on Underwood's Motion to Suppress and the vindictive prosecution aspect of his Motion to Dismiss. All three subjects of the subpoenas were not within the jurisdiction, so no witness could be served for his Motion to Dismiss for Vindictive Prosecution. Again saying that he was unprepared, Underwood objected to the motions being heard. Underwood refused assistance from standby counsel during the hearing. (July 29 Tr. 12, 17–18, 61.) Underwood came instead prepared with a lengthy "Notice" of dismissal for lack of jurisdiction which he made orally from notes at the podium. (July 29 Tr.2.) In what generously

7

could be characterized as a non-linear presentation, Underwood stated that the Court must prove its jurisdiction because the case law he cited:

> . . . upholds the fact that the court cannot have jurisdiction of a people since we, the people are sovereign and have the same authority as kings . . . . The reason for this challenge is people are human beings and a human being has natural rights, not to be confused with civil rights, [sic] are not subject to an equity court jurisdiction.

(July 29 Tr. 8.) Once again finding that the Court could deny the motion simply because Underwood did not bring it in a timely manner (or, as of that time, file it at all), and again reminding Underwood that his decision to represent himself did not exempt him from adhering to court rules or procedure, the Court denied the motion procedurally and substantively from the bench. (July 29 Tr. 12.) The Court made extensive findings about, among other things, why jurisdiction existed under 18 U.S.C. § 3231. (July 29 Tr. 15–16.) Underwood continued his objection, stating he would not go further with the case:

> . . . until the proof has been provided   Regardless of you all having jurisdiction, they have to prove that they have jurisdiction over me as a person.   Because you have geographical jurisdiction over a geographical mass of people or entities or corporations, it does not mean you have jurisdiction over a people.   That's still not justifying jurisdiction there.

(July 29 Tr. 16:16–23.) The Court overruled Underwood's objections. The Court then denied the motion to dismiss for vindictive prosecution, making extensive findings from the bench. (July 29 Tr. 24–28.)

During the motion to suppress, heard just after this Court's denial of Underwood's Motion to Dismiss for Vindictive Prosecution, Underwood disrupted proceedings by objecting to jurisdiction no fewer than nine times.[8] The Court noted for the record that Underwood was

---

[8] The Court has overruled Underwood's objections to jurisdiction at least sixteen times throughout all the hearings.

8

making that objection on a continuing basis, and that the Court overruled it on an ongoing basis as well. (July 29 Tr. 24.) Despite that ruling, Underwood continued to interrupt with jurisdictional objections. Underwood refused standby counsel assistance, and initially refused to view evidence, instead placing his head on counsel table as if to sleep. (July 29 Tr. 33.) Eventually, after repeated reprimands, Underwood chose to participate in the motion to suppress, questioning witnesses and presenting arguments. Underwood chose not to testify during the motion. The Court denied Underwood's Motion to Suppress from the bench, again making extensive findings.[9]

On August 5, 2016, the Court issued a written Order denying Underwood's Motion to Dismiss and Motion to Suppress, admonishing Underwood that he must follow all court procedures and rules and apply the correct substantive law.[10] (Aug. 5, 2016 Order 1, ECF No. 34.) The Court admonished Underwood that "he faces great peril in self representation during the trial," and that "it would be in his best interest to be represented by standby counsel" during the trial. (Aug. 5, 2016 Order 1–2, ECF No. 34.)

---

[9] The Court denied Underwood's oral right to travel argument. In this hearing, Underwood quoted from a 1930 Virginia appellate case that mentioned a right to travel, *Thompson v. Smith*, 154 S.E. 579 (1930). The Court admonished Underwood that the very same case also stated, in the next sentence, that a governmental entity could regulate the right to travel under its police power. (July 29 Tr. 101–102.) The Court again reminded Underwood why a trained lawyer might better present his defense. (July 29 Tr. 133.)

[10] Standby counsel had been accessible though not utilized by him to Underwood throughout the July 29, 2016 hearing. At the end of the July 29 hearing, after losing all motions he had brought, Underwood asked to dismiss his standby counsel, or, in the alternative, for the Court to appoint new counsel. (July 29 Tr. 134–35.) The Court denied the oral motion, noting that Underwood would "have to file a written motion, if that's what [he] want[s], and [he would] have to explain to [the Court] why that is necessary." (July 29 Tr. 135.) Underwood never filed a written motion to appoint new counsel.

### F. August 17, 2016: The Superseding Indictment

Trial had been scheduled for August 31, 2016.[11] On August 17, 2016, the United States charged Underwood in a three-count superseding indictment with: (1) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g); (2) possession with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D); and, (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c). (ECF No. 36.) These charges involve far greater potential penalties than the initial one-count indictment under which Underwood was charged; Count Three carries a mandatory minimum of five years' imprisonment and a maximum of a life sentence. The United States has represented to the Court and Underwood that the guidelines in this case likely will recommend imprisonment for 360 months to life.

Underwood was arraigned on the superseding indictment on August 24, 2016. (ECF No. 39.) That same day, ignoring the Court's repeated admonitions to abide by court rules and procedures, Underwood orally presented and "filed" his handwritten "notice for a dismissal on jurisdictional basis once again." (Aug. 24 Tr. 3.) No written motion preceded his oral one. Underwood also argued that his case could not go forward until the Court presented its oath of office on the record. (Aug. 24 Tr. 4.) He alluded to a violation of the Thirteenth Amendment to the United States Constitution.[12] (Aug. 24 Tr. 12 ("Also everybody with RICO is

---

[11] The August 31, 2016 trial date reflected two continuances requested by Underwood, and granted by the Court.

[12] The Thirteenth Amendment states in full: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, cl. 1.

10

extensive[sic]—this is also involving involuntary servitude as well as slavery, and it's also considered as human trafficking and kidnapping."). The Court "ma[d]e the finding that this is not involuntary servitude or slavery." (Aug. 24 Tr. 13.)

Underwood again disrupted court proceedings, refusing to allow a record to be made. (Aug. 24 Tr. 5.) While the Court did not force him to stand when court opened, it did not allow him to yell over rulings so that no record could be made. (*Id.*) The hearing established a complete record of the charges, the penalties, and expected court room etiquette. (Aug. 24 Tr. 14, 19, 21.) Underwood was again reminded of the perils of self-representation. (Aug. 24 Tr. 20.) The Court once more made crystal clear to Underwood that "the right to proceed *pro se* is contingent upon adherence to court rules and rulings and procedures." (Aug 24 Tr. 19.) The Court warned Underwood that repeated interruptions and refusal to abide by court rulings could result in his being removed from the courtroom, meaning he would watch the trial from a video feed while his standby lawyer tried the case. (Aug. 24 Tr. 5–6, 11.) He could also be found in contempt. Underwood refused to enter a plea. The Court entered a not guilty plea for a jury trial.

Underwood then presented the Court with a complaint for judicial misconduct: "This is judicial misconduct. Those are your papers. You just have been served." (Aug. 24 Tr. 14.) The Court filed Underwood's complaint with the United States Court of Appeals for the Fourth Circuit. That complaint has been resolved, not in Underwood's favor.[13]

Trial was scheduled for November 2, 2016.

---

[13] In an October 18, 2016 status hearing, the Court made specific findings on the record that this judge has not been recused and will not recuse herself. (Oct. 18 Tr. 4:1–24.) The Court found that no reason exists that its "impartiality might be reasonably questioned," or that it has any "personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(a), (b)(1). The Court continues to so hold.

11

### G. The Status Hearing

But another complication has intervened. First, on October 13, 2016, standby counsel SAFPD Wagner filed a Motion to Withdraw. (ECF No. 44.) During an October 18, 2016 status hearing, the Court granted the motion after colloquy with Underwood and SAFPD Wagner, and after hearing the United States' position. SAFPD Wagner cited a complete breakdown of communication. Weighing the so-called *Smith/Mullen* factors,[14] the Court granted the motion. New counsel has been appointed. (ECF No. 45.)

Second, during the October 18, 2016 hearing, Underwood, again ignoring Court rules and procedure, raised jurisdictional issues:

> All I'm asking really is the established evidence of the jurisdiction. If the Court has it, it shouldn't be a problem to establish that jurisdiction between personam and subject matter [sic]. That's just clear-cut and dried. . . . It's basically putting the government on notice and demanding the proof."

(Oct. 18 Tr. 13.) When halted from doing so, he said he could not understand how "a U.S. Supreme ruling" could be ignored by this Court:

> Me personally don't approve with the process of what's been taking place so far and constant overrule of certain supreme rulings, U.S. supreme rulings, [sic] constitutional rights, and without the communication of my standby counsel to understand how do a court or a judge [sic] have the authority to overrule a Supreme Court ruling, these are the reasons why I keep stabbing at the same exact topic. (Oct. 18 Tr. 7.)

\* \* \* \*

> MR. UNDERWOOD: Well, according to the U.S. Supreme Court that's not what it states. You don't lose until it's proven.

---

[14] *United States v. Smith*, 640 F.3d 580 (4th Cir. 2011); *United States v. Mullen*, 32 F.3d 891 (4th Cir. 1994). Those three factors are: "(1) the timeliness of the motion; (2) the adequacy of the court's subsequent inquiry; and[,] (3) 'whether the attorney/client conflict was so great that it had resulted in total lack of communication preventing an adequate defense.'" *Smith*, 640 F.3d at 588 (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006)).

> THE COURT: So here's the issue: I have ruled against that argument a lot.
> MR. UNDERWOOD: This is the misunderstanding that—I mean, I'm not trying to cut you off. I'm just trying to get an understanding . . . .
> My understanding is—my understanding is you're overruling a U.S. supreme [sic] ruling, and according to that—I'm trying to figure out how is that done when you're not over the Supreme Court. (Oct. 18 Tr. 14.)

\* \* \* \*

> I do understand that constitutional law, the Constitution itself, as well as the Supreme Court rulings are the highest supreme rulings over the land. So that's what led to the questions. How can a federal judge overrule a U.S. Supreme Court ruling? And that's not—that hasn't been explained to me just yet at all, even to this date right now. (Oct. 18 Tr. 23.)

\* \* \* \*

> THE COURT: . . . . If you don't get it, then you're not able to represent yourself.
> MR. UNDERWOOD: I think you're your [sic] misunderstanding when I say I don't get it. I get it, but what I don't get is how you're overruling it. And it's like the answer still hasn't been—yet to be answered. (Oct. 18 Tr. 32–33.)

Underwood suggested he was being punished for representing himself because he did not know the rules and they were being enforced against him.[15] (Oct. 18 Tr. 17.)

During the hearing, the Court expressed concern to Underwood that he did not seem to understand his case, or the Court's rulings. Upon questioning, Underwood seemed to understand some aspects of his case, but not others. The Assistant United States Attorney indicated that discovery exchange with Underwood—even trying to utilize standby counsel—had not proceeded well. He noted that Underwood could face imprisonment for 360 months to life under the guidelines.

---

[15] This Court has never in its decisions overruled the Supreme Court of the United States and, of course, told Underwood time after time that a peril of self-representation was navigating a complicated and unfamiliar judicial system. (*See, e.g.*, July 26 Tr. 42:22–25 ("And so I want you to understand that the downside of representing yourself is that you may not fully understand the implications of what you're putting in front of the Court.")).

## II. The Argument in Underwood's "Notice"

As to the motion at hand, Underwood does not present discernable arguments or motions, even in written form, in his "Notice."[16] Underwood states that the issue of the "Notice" is "whether or not the U.S. can present proof that it has political or civil contractual jurisdiction over me." (Not. ¶ 10, ECF No. 40.) He also asserts, however, that

> [t]he relationship of my standing to the U.S. is a political issue based on the U.S. compliance with the Federal Thirteenth Amendment, it is not a judicial issue. This [C]ourt does not have standing to determine my political status any more than would this court have standing to determine the political status of the Queen of England.

(*Id.* ¶ 11.) He requests that "the judge of this Honorable Court order the Clerk of this Honorable Court, to issue a check payable to Daymont Underwood, refunding to me, Daymont Underwood, the money spent during the time I have been unlawfully held in the U.S. government custody." (*Id.* ¶ 13.)

Essentially, Underwood seems to be arguing for at least the second time that the Thirteenth Amendment to the United States Constitution establishes that every person's "political status . . .

---

[16] The Court notes that Underwood refuses to follow the Federal Rules of Criminal Procedure by filing a "Notice" in lieu of a motion. His "Notice" need not be recognized by this Court. Given the number of explanations and warnings given to Underwood about following Court rules, his "Notice" could be denied altogether. Nothing is pending.

Underwood has twice filed motions challenging "unjust enrichment" by the government. At least twice Underwood has been told he cannot bring a civil action for unjust enrichment to bear in a criminal case. (July 29 Tr. 15; Oct. 18 Tr. 5–10.) This type of repetitive error in being able to understand the Court's rulings and the nature of the proceedings against him suggests to this Court that Underwood may not be competent to represent himself.

Based on that possibility, the Court takes this opportunity to address his "Notice" nonetheless. Perhaps Underwood invites this Court to sanction his conduct and find him in contempt. However, the Court cannot discern whether the conduct actually reflects that Underwowod completely lacks any understanding of the nature and consequences of these proceedings, or he lacks ability to defend himself or to assist standby counsel in his defense.

14

can only be determined by the voluntary act of each individual." (*Id.* ¶ 12.) As such, Underwood's relationship to the United States is a political issue outside the purview of this Court to determine. (*Id.* ¶ 11.) Moreover, because he asserts that the "U.S. [cannot] present its proof" that he has agreed "to be subservient to the Political or civil contractual Jurisdiction of the U.S.," (Not. ¶ 2, ECF No. 40), any attempt to exercise jurisdiction over him is a violation of the Thirteenth Amendment's prohibition on involuntary servitude. Because "the U.S. has no ability to establish that the U.S. has political or civil contractual jurisdiction over [him]," (*id.* ¶ 3), the Court has "no standing to proceed," and the charges against him must be dismissed, (*id.*).

### III. Analysis

Underwood has showered this Court with a series of motions, interruptions, and disjointed illogical positions that have been heard and ruled upon with great patience and clarity. The Court has trouble counting the number of times Underwood has challenged its jurisdiction because he has done so in written form twice, (ECF Nos. 40, 43), and in oral form so persistently that the challenges cannot easily be separated one from the other. The logic behind Underwood's claim that no jurisdiction exists equally defies explanation. Sometimes it is hard to understand, and other times the Court sits incredulously because Underwood brings the same argument a second, third, or fourth time despite the fact that the Court has told him that he has lost, noting that he cannot raise the issue again until appeal. The Court has warned Underwood that if he raises an issue and it "is overruled, the case will go forward. Repeated objections to rulings that have already been made can be so disruptive as to lose your ability to sit in this courtroom with respect to your own trial." (Aug. 18 Tr. 20.)

15

A.     **This Court Has Jurisdiction Over Underwood**

As an initial matter, the Court has already ruled, multiple times, that it has jurisdiction to try Underwood's criminal case.

> This court does have jurisdiction, and the motion misunderstands a great deal about how jurisdiction works in a federal court. (July 29 Tr. 11.)

\* \* \* \*

> The United States attorney has indicated that in addition to the grand jury finding, that it was in the Eastern District of Virginia, and that the statute was violated, it's alleged that the statute was violated, that his evidence would show that the crime was alleged to have been committed in Virginia, in Richmond specifically, which not only gives this court jurisdiction, it gives it venue. Which means you're not just in federal court appropriately, you're in the correct federal court based on the nature of the crime. (July 29 Tr. 12.)

\* \* \* \*

> So having rejected the sovereign argument before this court as has every court that I'm aware of done so previously, having noted the original jurisdiction from the United States Code, having noted that we are in a United States District Court, that there's an allegation of a crime that was committed within the jurisdiction of this court with a grand jury that returned an indictment, meaning they found probable cause, that at least a quorum of citizens, not prosecutors but citizens, voted probable cause, and that it is alleged to have occurred in the Eastern District of Virginia, in Richmond, on the date in the indictment, the motion to dismiss is denied. (July 29 Tr. 14–15.)

\* \* \* \*

> For the reasons stated from the bench, [Underwood's] motion to dismiss . . . [is] DENIED. (Aug. 5 Order 1, ECF No. 34.)

\* \* \* \*

Despite Underwood's mantra that jurisdiction can be raised at any time, *jurisdiction cannot be raised in this trial court anymore.* Underwood has preserved for appeal the jurisdictional argument, but his recurring pursuit in this Court shows a significant lack of comprehension about the nature of the proceedings. The law of the case dictates that, although Underwood may raise

16

the issue of jurisdiction on appeal, jurisdiction has been decided in this criminal matter. "As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983), *decision supplemented* 466 U.S. 144 (1984).

Furthermore, Underwood's argument that the Court lacks jurisdiction over him because no one has shown jurisdiction over him as a "people" is frivolous and entirely without merit. "Similar arguments have been made by other defendants in the past, and they have *always* been rejected as erroneous as a matter of law." *United States v. Fernando Delatorre*, No. 03cr90, 2008 WL 312647, at *1 (N.D. Ill., Jan. 30, 2008) (emphasis in original); *see also Akbar v. Clarke*, No. 1:15cv338, 2016 WL 4150456, at *7 (noting that such arguments are "wholly frivolous"). Courts in circuits across the country have rejected these arguments. *See Ribodoux v. O'Brien*, 643 F.3d 334, 339 (1st Cir. 2011) (collecting cases); *see also id.* ("[The argument that a court lacks jurisdiction over a defendant] seems to be a common illusion among certain groups alienated from society and is often reflected in doctrinal writings parroted in pleadings."). The United States Court of Appeals for the Fourth Circuit has stated simply that "[t]his claim is patently frivolous. Federal courts retain original jurisdiction over offenses against the laws of the United States." *United States v. Burris*, 231 Fed. App'x 281, 282 (4th Cir. 2007) (citing 18 U.S.C. § 3231).

The Court holds, in accordance with its own previous rulings and binding case law, that it has jurisdiction to hear the criminal case against Underwood.

## B. No Issue of Involuntary Servitude Exists

The Court has also ruled that no issue of involuntary servitude or slavery exists in this case. In an August 24, 2016 hearing, the Court overruled Underwood's Thirteenth-Amendment-based objection and "ma[d]e the finding that this is not involuntary servitude or slavery." (Aug. 24 Tr. 13:8–10.) The law of the case therefore dictates that there is no issue regarding involuntary servitude or slavery. *See Arizona v. California*, 460 U.S. 605, 618 (1983), *decision supplemented* 466 U.S. 144 (1984).

Even if the Court were inclined to reconsider its ruling, nothing in this case implicates the Thirteenth Amendment. The Thirteenth Amendment prohibits slavery and involuntary servitude. *See* U.S. Const. amend. XIII, cl. 1. Underwood's arrest and detention pending trial were pursuant to a valid indictment, superseding indictment, and arrest warrant. Underwood is being held pending trial pursuant to provisions of the Bail Reform Act, 18 U.S.C. § 3142, which provides that a person charged with an offense may be detained pending trial after being granted a hearing on the issue and if "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of a person as required and the safety of any other person and the community." 18 U.S.C. § 3142 (e)(1).

The Court has already ruled that there is no issue of involuntary servitude or slavery, and Underwood presents no evidence at all that the Court's ruling was incorrect. The Court holds, once again, that any Thirteenth Amendment motion is denied.

## IV. This Court Must Order a Competency Examination

Underwood has filed and re-filed the same or similar motions in his case, and has not prevailed. He has not abided by this Court's requirement to cease filing frivolously repetitive

motions.[17] Underwood's inability to understand what the Court has ruled, even with repeated in-court and written explanations, and his insistence to proceed *pro se* even when he says he cannot fully comprehend the Court's rules or the law, suggest an inability to understand the nature and consequences of the proceedings against him. His fractured relationship with an attorney otherwise known as able to this Court, and his persistent failure to follow court procedures, suggest an inability to assist in his own defense or present his own defenses. Either Underwood seeks delay at all costs, or he truly cannot grasp the import of, or process regarding, this case as it goes forward. The Court cannot speculate one way or the other with this defendant.

Therefore, the Court finds that it is not in the interest of justice to pursue Underwood's prosecution without a medical evaluation as to whether he understands the nature of the proceedings against him, or whether he can assist in his defense. This is especially true if he seeks to represent himself. A separate order shall issue.

### V. Conclusion

For the foregoing reasons, the Court will deny Underwood's "Notice (In Lieu of Motion) of my Challenge to the Political Jurisdiction of the United States of America Over Me and Demand that All Charges Against Me be Dismissed as United States of America Cannot Properly Establish that it has Political or Civil Contractual Jurisdiction Over Me." (ECF No. 40.) An appropriate order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 10/27/16

---

[17] To that end, the Court also enters a written order regarding decorum which all parties and *pro se* litigants must follow.