IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

v.                                                    Criminal Action No. **3:16CR18**

**DAYMONT UNDERWOOD,**

    Petitioner.

## MEMORANDUM OPINION

Daymont Underwood, a federal inmate proceeding *pro se*, filed this 28 U.S.C. § 2255 Motion ("§ 2255 Motion," ECF No. 123). Underwood demands relief upon the following grounds:[1]

| | |
|---|---|
| Claim One: | "Ineffective Assistance of Counsel/Attorney Misrepresentation by Rob Wagner, Craig Sampson, and Patricia Nagel." (*Id.* at 4.) |
| Claim Two: | "United States Lack of Jurisdiction." (*Id.* at 5.) |
| Claim Three: | "Fourth Amendment violation/Fruits of poisonous tree doctrine. District Court indicted Defendant with illegal evidence." (*Id.* at 7.) |
| Claim Four: | "District Court over-sentenced Defendant." (*Id.* at 8.) |
| Claim Five: | "Tenth Amendment Claim."[2] (*Id.* at 21.) |

The United States filed its response in opposition. (ECF No. 126.) Underwood did not file a reply and the time to do so has expired.[3]

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the capitalization and punctuation in the quotations from Underwood's submissions.

[2] "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." U.S. Const. amend. X.

[3] By Memorandum Order entered on November 19, 2019, the Court warned Underwood that if he failed to file a reply, "the Court [would] decide the § 2255 motion based on the record before it." (ECF No. 128, at 1.) Instead of filing a reply, Underwood filed several submissions

The matter is ripe for disposition. As explained below, Claims Two through Five are barred from review here and Claim One lacks merit.

## I. Pertinent Factual and Procedural History

On February 16, 2016, a grand jury returned a one-count Indictment charging Underwood with possession of a firearm by a convicted felon. (ECF No. 1, at 1.) The Court appointed Robert Wagner, of the Federal Public Defender's Office, to represent Underwood. On April 25, 2016, Counsel filed a Motion to Suppress Statements and Evidence. (ECF No. 15.) On June 15, 2016, Underwood filed a *pro se* Motion to Dismiss the Indictment (ECF No. 23), and after a hearing that same day, the Court permitted Underwood to represent himself with standby counsel from that point forward. (ECF No. 22.) During the suppression hearing on July 29, 2016, Underwood represented himself with standby counsel. After hearing from the parties, the Court denied the Motion to Suppress and Motion to Dismiss from the bench. (ECF Nos. 33, 34.) In the August 5, 2016 Order memorializing the bench rulings, the Court warned Underwood:

> Underwood represented himself during these hearings, rarely seeking input from standby counsel. While Underwood has exercised a clear and unequivocal waiver of counsel, the Court repeatedly advised him that he faced great peril doing so, and that his best interest would be served by seeking the advice of the Federal Public Defender. Underwood took several missteps when presenting his case, and the Court painstakingly admonished him – repeatedly – that he must follow court procedures, rules, and apply correct substantive law.
> A jury trial is scheduled for August 31, 2016. The Court takes this opportunity to admonish Mr. Underwood once again that he faces great peril in self representation during the trial. He must follow all court rules, including the Federal Rules of Evidence and the Federal Rules of Criminal Procedure. Moreover, improper conduct could result in appropriate sanctions. Mr. Underwood is admonished that it would be in his best interest to be represented by standby counsel – the Federal Public Defender – and to seek advice of counsel in preparing his case.

(ECF No. 34, at 1–2.)

---

that the Court has reviewed but have no bearing on the Court's resolution of the § 2255 Motion. (*See* ECF Nos. 129, 131, 133.)

On August 17, 2016, a grand jury returned a Superseding Indictment against Underwood charging him with possession of a firearm by a convicted felon (Count One); possession with the intent to distribute a mixture and substance containing a detectible amount of marijuana (Count Two); and, possession of a firearm in furtherance of a drug trafficking crime (Count Three). (ECF No. 36, at 1–3.) Underwood filed another *pro se* motion attempting to have the charges against him dismissed on the basis that the United States lacked jurisdiction over him. (ECF No. 40.) After hearing argument, the Court denied Underwood's motion in a lengthy Memorandum Opinion that detailed his contumacious and obstructionist behavior up to that point in the proceedings. (ECF No. 46, at 1–14.) The Court also granted counsel's motion to withdraw as standby counsel, continued the trial date, and ordered Underwood to undergo a competency evaluation. (ECF Nos. 45, 48, 49.) The Court appointed Craig Sampson as new standby counsel for Underwood.

On March 30, 2017, the Court conducted a pretrial hearing in anticipation of the jury trial scheduled for April 3, 2017, and Underwood represented himself *pro se* with standby counsel. (*See* ECF No. 68, at 1.) After repeated disturbances, obstructionist behavior, and a refusal to comport with the Court's directives, the Court revoked Underwood's right to represent himself and ordered counsel to represent Underwood from that point forward. (*See id.* at 1–5.) After a three-day trial, a jury convicted Underwood of all three counts. (ECF No. 80, at 1.) On July 14, 2017, the Court sentenced Underwood to 360 months of incarceration. (ECF No. 98, at 2.)

Underwood appealed. The United States Court of Appeals for the Fourth Circuit initially appointed Craig Sampson to represent Underwood. (ECF No. 100.) Sampson was eventually replaced by Patricia Nagel. (*See* ECF No. 102, at 1.) On appeal, Underwood raised, *inter alia*, Claims Two through Four of his § 2255 motion. *United States v. Underwood*, 726 F. App'x 945,

948–53 (4th Cir. 2018). The Fourth Circuit affirmed Underwood's convictions and sentences. *Id.* at 953.

## II.  Claims Barred from Review

The Court first determines that Claims Two through Four are barred from review in this collateral proceeding because Underwood raised them on direct appeal. The Fourth Circuit considered his claims and denied them, and no intervening change in the law permits him to relitigate these claims here. The Court then determines that because Underwood failed to raise his Tenth Amendment Claim, he may not raise it for the first time in this § 2255 proceeding absent a showing of cause and prejudice or actual innocence.

In Claims Two through Four, Underwood once again challenges the jurisdiction of the United States and the Court over him (Claim Two), the denial of the suppression motion (Claim Three), and the sentence he received (Claim Four). The Fourth Circuit rejected these three claims on direct appeal. *United States v. Underwood*, 726 F. App'x 945, 948–49, 951–53 (4th Cir. 2018). As the United States correctly asserts, Defendants are not "allowed to recast, under the guise of collateral attack, questions fully considered" by the court on direct appeal. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976). Underwood fails to direct the Court to an intervening change in the law that would permit him to relitigate these claims. *See United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009); *see also Boeckenhaupt*, 537 F.2d at 1183. Underwood simply "may not circumvent a proper ruling on [his direct appeal claims] by re-raising the same challenge[s] in a § 2255 motion." *Linder*, 552 F.3d at 396 (citations omitted). Accordingly, the Fourth Circuit's ruling bars collateral review of Claims Two through Four. Accordingly, Claims Two through Four will be DISMISSED.

In Claim Five, Underwood contends that his conviction and sentence violate the Tenth Amendment because the federal Government lacks a general police power and therefore, he could not have been prosecuted. The United States correctly points out that because Underwood could have raised, but failed to raise, this claim on direct appeal, it is barred from review here, absent a showing of cause and prejudice or actual innocence. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998). Underwood has failed to show that cause and prejudice exist to excuse his default or that he is actually innocent of his crimes of conviction. Accordingly, Claim Five is defaulted and will be DISMISSED.[4]

### III.  Ineffective Assistance of Counsel

In Claim One, Underwood contends that trial and appellate counsel performed deficiently. Pursuant to Rule 2(b) of the Rules Governing Section 2255 Proceedings, a petitioner must "state the facts supporting each ground" for relief. Rules Governing Section 2255 Proceedings for the United States District Courts, R. 2(b). Underwood's vague, conclusory, and nearly incomprehensible claims lack specificity and factual support and fail to establish a claim for relief against any of the three attorneys who represented him. *See United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (citation omitted) (internal quotation marks omitted) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court."); *see also Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it "stated only bald legal conclusions with no supporting factual allegations"). For this reason alone, Claim One may be DISMISSED.

---

[4] Similarly, with respect to Claims Two through Four, to the extent that Underwood somehow raises a slightly different claim in his § 2255 Motion than that raised on appeal, any new aspect would be barred because he could have raised, but failed to raise, this claim on direct appeal. *See Bousley*, 523 U.S. at 622–23.

Nevertheless, the Court generously parses through Underwood's § 2255 Motion and attempts to piece together claims on his behalf. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted). The Court first turns to Underwood's claims against trial counsel.

### A. Trial Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient, and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

#### 1. Counsel Robert Wagner

As a preliminary matter, Underwood first devotes several pages to the definition of "ineffective assistance" and explains his view of counsel's role generally in criminal proceedings. (ECF No. 123, at 4, 13–14.) With respect to counsel Robert Wagner, Underwood

first faults counsel for "try[ing] to coerce and convince [Underwood] to take a plea agreement."[5] (*Id.* at 15–16.) Underwood did not enter into a plea agreement, but instead chose to proceed to trial. Accordingly, this allegation is readily dismissed for lack of prejudice to Underwood.

Next, Underwood claims that counsel never advised Underwood "of any rights or options." (*Id.* at 16.) Underwood's allegation is entirely too vague and conclusory to state a claim for habeas relief. Accordingly, this statement, lacking factual support, fails to demonstrate deficiency of counsel or resulting prejudice. *Sanders*, 373 U.S. at 19.

Finally, Underwood vaguely faults counsel for his role in the suppression hearing. (ECF No. 123, at 16.) Underwood argues that counsel "refused to present evidence provided by [Underwood] . . . proving the traffic offense that led to the discovery of a gun and marijuana, was dismissed in state court" during the suppression hearing. (*Id.* at 16.) The record establishes that Underwood clearly and unequivocally waived his right to counsel and was granted permission to represent himself at the suppression hearing with the aid of standby counsel. The record also establishes that Underwood failed to avail himself of the resource available to him in standby counsel during the hearing. (*See* ECF No. 46, at 8–10; *see e.g.*, ECF No. 56, at 28–29, 50; ECF No. 38, at 27–28.) Thus, Underwood alone is at fault for any alleged error during the suppression hearing. Counsel cannot be faulted for any error during the suppression hearing.

Underwood also faults counsel for "refus[ing] to gather evidence like the camera footage from the businesses in the area." (ECF No. 123, at 16.) Underwood fails to demonstrate how this camera footage would have had any impact on the suppression hearing, which is fatal to this contention, because he fails to demonstrate prejudice. *See Strickland*, 466 U.S. at 694.

---

[5] In the same section of his filing, Underwood contends that United States laws and statutes create a "fictional citizenry" and because "the defendant in this case is a fiction, the attorney could never converse with the defendant because the defendant is not real." (*Id.* at 15.) His argument as to attorney Nagel incorporates his previous arguments.

7

Underwood also claims that counsel threatened a potential defense witness and "admitted sharing defense strategies with prosecutor stating he is [an] officer of the court and he had a duty to do that." (ECF No, 123, at 16.)  Other than these vague allegations, Underwood fails to establish how counsel's purported actions had any impact on the suppression hearing, and therefore, resulted in any prejudice to Underwood.  *Strickland*, 466 U.S. at 694.  Underwood chose at his own peril to represent himself on the suppression motion, and he cannot now blame counsel for the result or for failing advance his frivolous theories.  Underwood fails to demonstrate that counsel rendered deficient performance or any resulting prejudice in his role as standby counsel.  Accordingly, Underwood's ineffective assistance of counsel claim with respect to counsel Robert Wagner lacks merit and will be DISMISSED.

### 2. Counsel Craig Sampson

Underwood next faults Craig Sampson because he "failed to answer the same questions that were directed to Rob Wagner," "refused to make the distinction between the defendant/legal fiction/artificial person and the natural man, the live flesh and blood sentient man, which is the undersigned to the jury," refused to challenge the jurisdiction of the Court, and "fail[ed] to mention they are foreign agents." (ECF No. 123, at 16, 17.)  As explained to Underwood *repeatedly* before, these arguments are frivolous.  *See United States v. Daymont Underwood*, No. 3:16cr18, 2016 WL 6406215, at *9 (E.D. Va. Oct. 27, 2016) (quoting prior transcripts and orders and observing that "the Court has already ruled, multiple times, that it has jurisdiction to try Underwood's criminal case").  The Court specifically found prior to trial that "[d]espite Underwood's mantra that jurisdiction can be raised at any time, *jurisdiction cannot be raised in this trial court anymore*." *Id.* (emphasis in original).  Counsel cannot be faulted for failing to

8

raise these arguments before the jury. Thus, Underwood establishes no deficiency of counsel or any resulting prejudice.

Underwood also suggests that counsel "refused to ask rebuttal questions to contest the validity of witnesses and expert testimonies." (ECF No. 123, at 17.) As his only example, Underwood takes issue with the fact that a witness, Evalina Laboy,[6] "testified she purchased marijuana from [Underwood] 70 times" but "Craig Sampson refused to direct the jurors' attention to the exhibit of the call log showing that the testimony was false and the record merely showed the witness attempting to purchase on one occasion . . . ." (*Id.*)

Laboy testified that she and her cousin purchased small amounts of marijuana from Underwood "[f]our to times a week" between May and October 2015, for a total of approximately fifty to seventy transactions. (ECF No. 112, at 267–68.) Laboy explained that she would call or text Underwood and then meet him. (ECF No. 112, at 269.) The United States entered copies of a call log of text messages between Underwood and Laboy and asked Laboy about two different days as examples of transactions between the two. (ECF No. 112, at 272–277.) Counsel questioned Laboy about how many times she made the actual exchange of money for drugs with Underwood as opposed to her cousin and asked her about the text messages between herself and Underwood. (ECF No. 112, at 280–85.) The jury found Laboy's testimony credible. Underwood fails to demonstrate what counsel could have asked Laboy further to discredit her testimony.

Underwood also fails to show that directing the jury's attention to the call log in an effort to undermine Laboy's testimony would have aided Underwood's defense. Underwood's phone contained a "multitude of text messages" sent to large groups of people advertising marijuana

---

[6] The Court corrects the spelling of Ms. Laboy's name as reflected in the trial transcript. (ECF No. 112, at 263.)

and related to drug exchanges, indicating that Underwood sold marijuana to more people than just Laboy. (ECF No. 112, at 229, 236, 240–45.) Thus, Underwood fails to demonstrate any deficiency of counsel or resulting prejudice from counsel's failure to advance the line of questioning Underwood urges here. Accordingly, Underwood's ineffective assistance of counsel claim with respect to counsel Craig Sampson will be DISMISSED.

### B. Appellate Counsel

"In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citing *Strickland*, 466 U.S. at 688, 694). Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). A presumption exists that appellate counsel "decided which issues were most likely to afford relief on appeal." *Bell*, 236 F.3d at 164 (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). .

With respect to appellate counsel, at most, Underwood states: "As for Patricia Nagel, all of the above applies to her as well, only she acted on her own without conversing with the undersigned." (ECF No. 123, at 17–18.) The record contradicts Underwood's claim that he did not converse with appellate counsel. Nagel must have discussed with Underwood the issues to raise on appeal as she raised his frivolous jurisdiction claim, *see United States v. Underwood*,

10

726 F. App'x 945, 948 (4th Cir. 2018), and also raised various challenges to his suppression motion and sentence that Underwood raises again in the instant § 2255 Motion. *See id.* at 949, 951–53. Moreover, Underwood fails to identify any issue that he wished for counsel to raise that is stronger than the issues she presented on appeal. *See Bell*, 236 F.3d at 164. Underwood demonstrates neither deficiency or appellate counsel nor resulting prejudice. Accordingly, Underwood's ineffective assistance of counsel claim with respect to counsel Patricia Nagel will be DISMISSED.

In sum, the record reflects that trial and appellate counsel admirably represented or assisted as standby counsel for an extraordinarily difficult client. Underwood's assertions to the contrary lack merit. Because Underwood fails to demonstrate any deficiency of his three attorneys or resulting prejudice, Claim One lacks merit and will be DISMISSED.

### III.  Conclusion

Underwood's claims and the action will be DISMISSED. The § 2255 Motion (ECF No. 123) will be DENIED. Underwood's Motion to Dismiss Counsel of Record (ECF No. 132) is frivolous and will be DENIED.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or

that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Underwood has not satisfied this standard. A certificate of appealability will be DENIED.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
M. Hannah Lauck
United States District Judge

Date: May 5, 2021
Richmond, Virginia